487 S.E.2d 248

**Floyd Keith BROWN**

v.

**COMMONWEALTH of Virginia.**

**Record No. 0753–95–2.**

Court of Appeals of Virginia, .
Richmond.

July 8, 1997.

Bruce M. Steen (McGuire, Woods, Battle & Boothe, L.L.P., on brief), Charlottesville, for appellant.

Eugene Murphy, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

Present: BENTON, COLEMAN, WILLIS, ELDER, BRAY, FITZPATRICK, ANNUNZIATA and OVERTON, JJ.

UPON A REHEARING EN BANC

COLEMAN, Judge.

Floyd Keith Brown was convicted by a jury of statutory burglary, rape, and two counts of forcible sodomy. A panel of this Court reversed the convictions on the ground that the trial court erroneously excluded as hearsay two statements offered by the defense. *See Brown v. Commonwealth,* 23 Va.App. 225, 475 S.E.2d 836 (1996). We granted the Commonwealth a rehearing *en banc.*

Upon rehearing, we uphold the trial court's ruling that the defendant's out-of-court question to a police officer was inadmissible hearsay. However, we hold that an out-of-court conversation which allegedly occurred between the victim and defendant was not hearsay because it was offered to prove that the victim and defendant knew one another or had previously met; it was not offered to prove the truth or falsity of the assertions contained therein. Thus, we hold that the trial court erred by refusing to admit testimony that a witness overheard the conversation between the victim and the defendant. However, we hold that the error in excluding the conversation was harmless because the evidence of guilt was overwhelming. Accordingly, we affirm the defendant's convictions.

## I. BACKGROUND

The victim testified that on June 25, 1994, she went to bed around 12:30 a.m. or 1:00 a.m. Some time later, she awoke and found the defendant, who was naked, standing over her bed. The victim screamed and tried to get away. The defendant grabbed the victim by the neck, hit her in the face, and choked her. He then threw her across the bed and raped her, forcing her to engage in both oral and anal sodomy. After forcing the victim to have intercourse, the defendant fell asleep and the victim fled from the apartment.

A passing motorist saw the victim "running down the road naked." The motorist testified that the victim was "bloody" and "scared to death." The victim told the motorist that a

man had broken into her apartment and raped her. The motorist called the police. When the police arrived, they found the victim in the back seat of the motorist's car wrapped in a sheet, which the motorist had provided. Officer R.L. Shaner testified that the victim's right eye was "swollen and bruised."

The police went to the victim's apartment and arrested the defendant, who was asleep in the victim's bed. The defendant told the police that he had consensual intercourse with the victim. He said that he had gone to the victim's apartment because he had obtained marijuana for her. He told the officers that he and the victim did not consume all of the marijuana. The police found no marijuana in the apartment, and the victim's blood tested negative for marijuana. The defendant's blood tested positive for cocaine but showed no trace of marijuana. A forensic expert testified that marijuana would be present in a person's blood for at least twenty-four hours after the last use.

When the police searched the victim's apartment, they found a chair placed against the outside of the victim's kitchen window. The kitchen window sill was bent, and the screen was damaged. The defendant's palm prints were found on the kitchen sink facing inward from the kitchen window. The defendant's shoes were on the kitchen sink, and dirt on his shoes appeared to match the dirt in the victim's backyard. Furniture in the apartment had been overturned. Blood was found in eight different areas on the bed sheet and on the victim's t-shirt.

A doctor examined the victim that night and stated that the victim was "clearly nervous and jittery." The victim's right eye was bleeding and swollen shut, and she had several red marks on her forehead. In addition, she had several scratches on her right front thigh, several red marks on her throat, and dried blood on her head, hair, and perineum. Her nose was bloody, and blood was found under all of her fingernails. Her perineum was slightly swollen and red.

In response to the victim's claim that she had bitten her attacker's thumb, the police examined the defendant's thumb when he was arrested and found bite marks. The bite marks were open and raw and appeared to be of recent origin.

At trial, the defendant testified that he had known the victim for around two and one-half months before the incident, that she had admitted him to the apartment that night, and that they had consensual sexual intercourse. He denied using any force or violence on the victim.

## II. OFFICER BERRYMAN'S TESTIMONY

■ At trial, Officer Matthew Berryman testified that, at the police station, the defendant "asked me twice if Peggy [the victim] knew he was here." The prosecutor objected on the ground that the statement was hearsay. The trial judge sustained the objection and ruled that this testimony was inadmissible hearsay.

■ Hearsay is "[a] statement other than one made by the declarant while testifying at trial—offered in evidence to prove the truth of the matter asserted." *Black's Law Dictionary* 649 (5th ed.1979).

Whether an extrajudicial statement is hearsay depends upon the purpose for which it is offered and received into evidence. If the statement is received to prove the truth [or falsity] of its content, then it is hearsay and, in order to be admissible, must come within one of the many established exceptions to the general prohibition against admitting hearsay.

*Hanson v. Commonwealth,* 14 Va.App. 173, 187, 416 S.E.2d 14, 22 (1992).

"Part of the difficulty in 'not-for-truth' situations is due to the fact that often such evidence will have a dual nature; the declaration may indeed be relevant on some matter unrelated to the truth of the content of the statement, and yet the content of the statement may go to the issues of the case as well. *See, e.g., Donahue v. Commonwealth,* [225 Va. 145, 300 S.E.2d 768 (1983) ]. This is perhaps the situation

which creates the greatest dilemma for the courts. In that regard, however, it should be remembered that it is a time-honored principle of evidence law that, in general, if evidence is admissible for *any* purpose, it is admissible." *Jenkins v. Commonwealth*, 22 Va.App. 508, 521, 471 S.E.2d 785, 791 (1996) (*en banc*) (quoting 2 Charles E. Friend, *The Law of Evidence in Virginia* § 18–3, at 95–96 (4th ed.1993) (footnote omitted)).

■ The initial issue in this case is whether an extrajudicial statement that is in the form of a question, such as "Does Peggy know I am here?", can be an assertion or declaration of fact that can constitute hearsay. In order for a statement to be hearsay it must assert the truth or falsity of a fact. In many instances, questions by an out-of-court declarant contain no assertion; they simply seek answers. *See Carlton v. State*, 111 Md.App. 436, 681 A.2d 1181, 1184, *cert. denied*, 344 Md. 328, 686 A.2d 634 (1996). However, a question can include an implied assertion. "For example, the question, 'Do you need change?' impliedly asserts that the questioner has change. The question, 'Why did you stab me, Brutus?' impliedly asserts that the questioner was stabbed by Brutus." *Id.* As these questions demonstrate, the extent to which the question may or may not contain an implied assertion depends on the nature of the question and the circumstances. *But see Bolen v. Paragon Plastics, Inc.*, 754 F.Supp. 221, 225 (D.Mass.1990) (holding that, under the Federal Rules of Evidence, an inquiry cannot be an assertion); *United States v. Lewis*, 902 F.2d 1176, 1179 (5th Cir.1990) (same); *State v. Carter*, 72 Ohio St.3d 545, 651 N.E.2d 965, 971 (holding that the question posed by the accused in this case was not an assertion because it was incapable of being proved either true or false), *cert. denied*, —— U.S. ——, 116 S.Ct. 575, 133 L.Ed.2d 498 (1995); *Washington v. State*, 87 Md.App. 132, 589 A.2d 493, 495 (1991) (holding that the question posed by the accused was not offered as an assertion of truth).

The Virginia Supreme Court recognized in *Stevenson v. Commonwealth*, 218 Va. 462, 237 S.E.2d 779 (1977), that an

assertion can be implied, in that case from a declarant's conduct, and that such an implied assertion is inadmissible as hearsay if offered to prove the truth of the assertion implied from the conduct. In *Stevenson*, the defendant was suspected of committing a homicide. A police officer came to the defendant's home and asked his wife if the defendant had changed clothes the day of the homicide. In response to the officer's question, the defendant's wife retrieved a shirt and gave it to the officer. *Id.* at 464, 237 S.E.2d at 781. The Supreme Court held that "the conduct of [the defendant's wife] was intended as a nonverbal assertion for the purpose of showing that the shirt not only belonged to [the defendant] but was in fact worn by him on the day of the crime" and was, therefore, inadmissible hearsay evidence. *Id.* at 465, 237 S.E.2d at 781–82.

In this case, when the defendant asked "Does Peggy know I am here?", he was necessarily implying or asserting, "I know Peggy personally." *See, e.g., Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) (finding that a witness' statement included an implicit identification of the accused); *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949) (finding that a conspirator's statement implied petitioner's guilt); *United States v. Reynolds*, 715 F.2d 99 (3d Cir.1983) (recognizing the validity of implied assertions and holding that codefendant's statement, "I didn't tell them anything about you," was relevant only to prove the accused's guilt and, therefore, inadmissible hearsay); *see also* Laurence H. Tribe, *Triangulating Hearsay*, 87 Harv. L.Rev. 957, 958 (1974); Ronald J. Bacigal, *Implied Hearsay: Defining the Battle Line Between Pragmatism and Theory*, 11 S. Ill. U. L.J. 1127, 1141 (1987). The Virginia Supreme Court has held that "[t]he rule against hearsay prohibits ... the admission of extra-judicial statements 'only when offered for a special purpose, namely, as assertions to evidence the truth of the matter asserted.'" *Church v. Commonwealth*, 230 Va. 208, 211–12, 335 S.E.2d 823, 825 (1985). The defendant offered the statement, "Does Peggy know I am here?", to prove by implication from the question that he personally knew the

victim. In order for the jury to infer from the statement that the defendant knew the victim, the jury had to determine the truth or falsity of the implied assertion. The statement's probative value depended entirely upon the truth of an inferred fact that the statement implied and as such it was hearsay.

Defendant's statement to Officer Berryman was not relevant for any other purpose and the fact that the statement was made in no way proved the defendant's relationship with the victim unless the truthfulness of the implied assertion was accepted. Therefore, the statement was offered to prove the truth of its content and it was inadmissible hearsay.[1]

### III. CHARLES GENTRY'S TESTIMONY

■ A defense witness, Charles Gentry, testified that he had seen the defendant and the victim together on two or three occasions. Defense counsel sought to have Gentry testify that he had "overheard a conversation between the defendant and [the victim] involving trading sex and cocaine that took place in the area of Gibson's store." The trial judge ruled that the fact of the conversation, but not the content, was admissible because the content was hearsay and was not proper impeachment of the victim's testimony that she did not know the defendant.

The trial judge correctly ruled that the fact a conversation purportedly occurred was admissible to prove that the defendant and the victim knew one another. The fact that the conversation took place would also have been relevant to impeach the victim if the jury believed Gentry's evidence that the conversation occurred. However, the defendant did not seek to introduce the evidence that a conversation had occurred between the victim and the defendant after the trial judge ruled that Gentry could not testify as to the nature and particulars of the alleged conversation. Nevertheless, the

---

1. The defendant ultimately testified that he asked Officer Berryman if "Peggy [knew that he was] . . . down at the police station."

trial court erred in ruling that Gentry could not testify to the nature and content of the alleged conversation in order to prove that the defendant and victim knew one another and to prove the nature of the relationship. *See Manetta v. Commonwealth*, 231 Va. 123, 127, 340 S.E.2d 828, 830 (1986) ("If the court can determine, from the context and from the other evidence in the case, that the evidence is offered for a . . . purpose [other than to establish the truth of the facts asserted], the hearsay rule is no barrier to its admission."). Gentry would have testified that he had seen the victim and the defendant together on two or three occasions before the alleged offense and that on one occasion their conversation was about trading sex for cocaine. Gentry's testimony was offered to prove the fact that the statements about trading sex for cocaine were made; therefore, the truth or falsity of the alleged conversation was not at issue. However, the nature of the conversation between the victim and defendant tended to prove, if the fact finder believed it occurred, that the conversants were not strangers and were, in fact, more than casual acquaintances. The fact that the defendant and victim had engaged in a conversation of an intimate or personal nature prior to the alleged offense was relevant, if believed, to prove the prior relationship between them. Although the conversation would be inadmissible as hearsay to prove the truth or falsity of whether they in fact traded sex for cocaine, the fact that they may have engaged in an intimate conversation would prove that they knew one another, which is relevant to whether they engaged in consensual sex, and it could be considered to refute the victim's testimony that she did not know the defendant. Thus, the content of the alleged conversation "was not hearsay, but was admissible as circumstantial evidence tending to establish the probability of a fact in issue." *Church*, 230 Va. at 212, 335 S.E.2d at 825.

■ "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Blain v. Commonwealth*, 7 Va.App. 10, 16, 371 S.E.2d 838, 842 (1988). The trial court had discretion to limit the extent to which the

witness would be permitted to give the details and particulars of the conversation. However, because the alleged conversation was relevant to prove the nature of the relationship between the victim and the defendant, which fact was material to prove whether the sexual intercourse was consensual or against the victim's will by force or violence, it was error to prohibit Gentry from testifying about the general content of the alleged conversation.

 Although the trial court erred by refusing to admit Charles Gentry's testimony, the error was harmless. "A defendant is entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). "[A]n erroneous evidentiary ruling does not require reversal of a criminal conviction where the error is harmless." *Weller v. Commonwealth,* 16 Va.App. 886, 896, 434 S.E.2d 330, 337 (1993) (holding that exclusion of non-hearsay testimony was harmless error), *aff'd on reh'g en banc,* 443 S.E.2d 171 (1994) (affirming order unpublished in Virginia Court of Appeals Reports). Because the defendant conceded that he had sexual intercourse with the victim, the only issues for the jury to decide were whether the intercourse was accomplished through the use of physical force and against the will of the victim. Evidence independent of the victim's testimony and without regard to her credibility proved overwhelmingly that the defendant used force to accomplish non-consensual sexual intercourse. *See Jenkins v. Commonwealth,* 244 Va. 445, 454, 423 S.E.2d 360, 366 (1992), *cert. denied,* 507 U.S. 1036, 113 S.Ct. 1862, 123 L.Ed.2d 483 (1993); *Goins v. Commonwealth,* 218 Va. 285, 288, 237 S.E.2d 136, 138–39 (1977). Thus, even if the jury believed that the defendant and the victim discussed exchanging sex for drugs and that such a conversation affected the victim's credibility, those determinations would have had no bearing upon the jury's decision that the defendant used force to have non-consensual sexual intercourse with the victim. Therefore, neither the jury's guilty verdict nor its recommended sentence would have been influenced by admitting Charles Gentry's testimony.

In Virginia, non-constitutional error is harmless "[w]hen it *plainly appears* from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." "[A] fair trial on the merits and substantial justice" are not achieved if an error at trial has affected the verdict. .... An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.

*Lavinder v. Commonwealth,* 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (*en banc*) (alteration in original) (quoting Code § 8.01–678).

Here, overwhelming evidence, independent of the victim's testimony, proved that the defendant used physical force to accomplish non-consensual sexual intercourse with the victim. All the witnesses who saw the victim on the night of the alleged crimes testified that she was clearly injured. The motorist testified that the victim was "bloody" and "scared to death." The police officer testified that the victim's right eye was swollen and bruised. The emergency room physician stated that the victim had numerous injuries consistent with forced sexual intercourse, including a bloody right eye that was swollen shut, a bloody nose, red marks on her forehead, several scratches on her right front thigh, several red marks on her throat, and dried blood on her head, hair, and perineum. Blood was found under all of the victim's fingernails, and her perineum was slightly swollen and red.

The physical evidence in the apartment proved a forcible entry. A chair had been placed against the wall below the kitchen window. The window sill into the apartment was bent, and the screen to the kitchen window was damaged. Palm prints that were identified as belonging to the defendant were found on the kitchen sink facing inward from the kitchen window. The defendant's shoes were found on the kitchen sink, and dirt on the shoes appeared to match the dirt in the victim's backyard. Furniture had been knocked over in the apartment, and blood was found in approximately eight differ-

ent areas on a bed sheet. Blood was also found on the victim's t-shirt.

The defendant's story to the police was inconsistent with the physical evidence. The defendant told the police that he went to the victim's apartment because he had obtained marijuana for her. However, no marijuana was found in the apartment, and the victim's blood did not test positive for marijuana. Furthermore, although the defendant's blood tested positive for cocaine, it showed no trace of marijuana. A forensic expert testified that marijuana would be present in a person's blood for at least twenty-four hours after the last use. The police found recent bite marks on the defendant's thumb, which were consistent with the victim's claim that she had bitten it.

In light of the overwhelming evidence, the admission of Charles Gentry's testimony that he claimed to have overheard a conversation between the defendant and victim tending to prove that they knew one another and discussed trading cocaine for sex would not have affected the jury's guilty verdict. *See Hanson,* 14 Va.App. at 191, 416 S.E.2d at 24 (holding that certain hearsay statements that should have been excluded were nonetheless "inconsequential" in light of the overwhelming evidence of the accused's guilt). The defendant testified that the victim let him into her apartment and that no violence occurred. However, a reasonable fact finder could not have inferred that the violence or battering of the victim occurred after consensual sexual intercourse. The physical evidence discredited the defendant's testimony. *See LaPrade v. Commonwealth,* 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950) ("[W]hat inferences are to be drawn from proved facts is within the province of the jury and not the court so long as the inferences are *reasonable and justified.*") (emphasis added).

 Likewise, the trial court's error did not affect the defendant's sentence. The fact that the jury recommended the maximum sentence on all four counts does not require a finding that the error affected the jury's sentence recommen-

dations; rather, we must evaluate the seriousness of the error. *See Yager v. Commonwealth,* 220 Va. 608, 615, 260 S.E.2d 251, 256 (1979).

At the sentencing phase in this bifurcated trial, the Commonwealth proved that in 1993 the defendant had been convicted of sodomy and assault and battery; in 1991 he had been convicted of grand larceny and breaking and entering; in 1990 he had been convicted of driving as an habitual offender and possession of cocaine; in 1989 he had been convicted of petit larceny and escape; and in 1985 he had been convicted of breaking and entering.

The jury's sentence recommendations were undoubtedly influenced by the brutality of the crimes against this victim and by the defendant's record of multiple felony convictions. The verdict and sentences would not have been affected by the admission of Charles Gentry's testimony that he purportedly overheard a conversation between the defendant and the victim.

In summary, the trial court did not err by refusing to admit Officer Berryman's testimony about the defendant's out-of-court statement indicating that he knew the victim. Furthermore, although it was error to exclude Charles Gentry's testimony concerning the nature and subject matter of the conversation that he allegedly overheard, the error was harmless. Accordingly, we affirm the defendant's convictions.

*Affirmed.*

BENTON, Judge, dissenting.

I would hold that Floyd Keith Brown's question to the officer was not hearsay and was improperly excluded by the trial judge. I would also hold that the trial judge's error in excluding Charles Gentry's testimony about a conversation between the complainant and Brown was not harmless. Accordingly, I dissent.

## I.

### BROWN'S QUESTION

"Hearsay is a statement, other than one made by the declarant while testifying at trial, which is offered to prove the truth of the matter asserted." *Clark v. Commonwealth*, 14 Va.App. 1068, 1070, 421 S.E.2d 28, 30 (1992). "Unless it is offered to show its truth, an out-of-court statement is not subject to the rule against hearsay and is admissible if relevant." *Church v. Commonwealth*, 230 Va. 208, 212, 335 S.E.2d 823, 825 (1985); *see also Hamm v. Commonwealth*, 16 Va.App. 150, 156, 428 S.E.2d 517, 521 (1993) ("If a statement is offered for any purpose other than to prove the truth or falsity of the content of the statement, such as to explain the declarant's conduct or that of the person to whom it was made, it is not objectionable as hearsay.").

For a statement to be considered hearsay, the statement must contain an assertion of fact. "According to the very definition of hearsay, an inquiry [or question] is not an assertion and therefore does not constitute hearsay." *Bolen v. Paragon Plastics, Inc.*, 754 F.Supp. 221, 225 (D.Mass.1990); *accord United States v. Lewis*, 902 F.2d 1176, 1179 (5th Cir.1990); *State v. Carter*, 72 Ohio St.3d 545, 651 N.E.2d 965, 971, *cert. denied*, —— U.S. ——, 116 S.Ct. 575, 133 L.Ed.2d 498 (1995); *Washington v. State*, 87 Md.App. 132, 589 A.2d 493, 495 (Md.1991). Because the testimony the trial judge excluded was the police officer's report that Brown asked a question, I would hold that the testimony was not barred by the hearsay rule.

I find nothing in Virginia decisions to support the majority's expanded definition of hearsay. Although some jurisdictions have recognized that implied assertions may be hearsay, *see, e.g., Carlton v. State*, 111 Md.App. 436, 681 A.2d 1181, 1184 (1996), the Supreme Court of Virginia has not adopted that rule. In determining Virginia law, the Supreme Court of Virginia has held that "[t]he rule against hearsay prohibits ... the admission of extra-judicial statements '*only* when offered for a special purpose, namely, as *assertions to evidence the*

*truth of the matter asserted.'* " *Church,* 230 Va. at 211–12, 335 S.E.2d at 825 (citation omitted) (emphasis added). Thus, the Supreme Court ruled in *Church* that a child's out-of-court statement "that sex is 'dirty, nasty and it hurt' " was not hearsay and was admissible as circumstantial evidence "to show the child's attitude toward sex, an attitude likely to have been created by a traumatic experience." *Id.* at 212, 335 S.E.2d at 825–26. This ruling can only be interpreted as rejecting an "implied assertion" analysis because the evidential predicate for the admission of the testimony in *Church* was most certainly "implied" within the child's statement.

The majority contends, however, that the Supreme Court in an earlier decision, *Stevenson v. Commonwealth,* 218 Va. 462, 237 S.E.2d 779 (1977), accepted the principle that implied assertions are hearsay.[2] I disagree. The rule announced in *Stevenson* concerns the impropriety of using "[n]onverbal conduct of a person intended by him as an assertion . . . [as] evidence to prove the truth of the matter asserted." *Id.* at 465, 237 S.E.2d at 781. The *Stevenson* opinion contains no discussion of "implied assertions" and had no need to do so because the Court concluded that "nonverbal conduct of a person" is a "statement" if it is intended as an assertion. *Id.*

Moreover, in *Stevenson,* the parties did not dispute the content of the assertion. *See id.* at 465–66, 237 S.E.2d at 781–82. Here, however, despite Brown's literal words, the majority designates as the "implied assertion" what it perceives Brown intended to assert, or, more precisely, what a trier of fact could possibly infer from Brown's words. I cannot agree that the rule in *Stevenson,* finding an assertion in *conduct* consistent with that assertion, supports the majority's new rule, which finds an "implied assertion" in a facially non-assertive question containing *words* with an entirely different

---

2. Similarly, a panel of this Court in *White v. Commonwealth,* 21 Va.App. 710, 467 S.E.2d 297 (1996), discussed *infra* at note 2, stated that the "conduct [at issue in *Stevenson* ] was an implied assertion." *Id.* at 718, 467 S.E.2d at 301.

meaning.[3]

---

3. Indeed, in *White v. Commonwealth*, 21 Va.App. 710, 717–19, 467 S.E.2d 297, 301–02 (1996), a panel of this Court rejected a defendant's objection that testimony concerning nonverbal conduct that contained an assertion was hearsay. *See id.* That decision distinguished *Stevenson* and tacitly applied a *Church* analysis. *See id.*

 In *White*, a defendant was tried on various charges including malicious wounding and larceny of a police officer's handgun. *See id.* at 710, 467 S.E.2d at 297. A police officer testified that the defendant shot him. *See id.* at 719, 467 S.E.2d at 302. After a scuffle with the defendant, the officer saw the defendant leaving with a gun. *See id.* The officer then discovered that his 9mm handgun was missing. *See id.* The Commonwealth sought to offer as evidence the police officer's 9mm handgun and testimony of a ballistics expert. *See id.* at 717, 467 S.E.2d at 301. Obviously, the police officer would have been a sufficient testimonial sponsor for the admission of his gun. However, the Commonwealth sought to establish a foundation for the admission of the gun by using another witness' testimony to prove the circumstances under which the gun was found.

 The witness testified that the defendant visited her apartment the night after the shooting and asked the witness to arrange with the witness' neighbor an exchange of a 9mm gun for cocaine. *See id.* at 719, 467 S.E.2d at 302. The witness testified that after she went to speak to the neighbor, the defendant visited the neighbor and returned with cocaine. *See id.* No testimony established that the witness saw the gun. *See id.* Over objection, the witness was allowed to testify that at the request of the police she went to her neighbor the following morning and retrieved a 9mm handgun. *See id.* at 718–19, 467 S.E.2d at 301–02.

 The defendant in *White* relied upon *Stevenson* for his contention that the evidence was hearsay. *See id.* at 717, 467 S.E.2d at 301. However, the opinion in *White* stated that the defendant asserted that this testimony was hearsay because it necessarily contained the neighbor's implied assertion that the gun given to the witness was the same handgun that the defendant gave to the neighbor the previous day. *See id.* at 717–18, 467 S.E.2d at 301. Whatever argument the defendant advanced, the opinion in *White*, like the majority in this case, analyzed *Stevenson* and stated that the "conduct [at issue in *Stevenson*] was an implied assertion." 21 Va.App. at 718, 467 S.E.2d at 301.

 However, no discussion in *Stevenson* referred to any "implied assertion."

 The *White* decision held that the trial judge did not err in allowing the testimony because "[c]ircumstantial evidence, other than the neighbors' act of giving the gun to [the witness], connected the defendant with the 9mm handgun" that the witness retrieved. *Id.* at 719, 467 S.E.2d at 302. The decision elaborated as follows:

 > The trier of fact did not have to rely on a nonverbal assertion by the neighbors to connect the defendant with the gun introduced at trial. *Proof* that [the officer's] gun was missing after the scuffle with the defendant, that the defendant was seen leaving the scene

Clearly, the majority opinion's conclusion that an implied assertion contained within a non-assertive statement or question is hearsay is inconsistent with Virginia decisions. *See Church,* 230 Va. at 211–12, 335 S.E.2d at 825–26; *Weller v. Commonwealth,* 16 Va.App. 886, 894–95, 434 S.E.2d 330, 336 (1993), *aff'd on reh'g en banc,* 443 S.E.2d 171 (1994) (affirming order unpublished in Virginia Court of Appeals Reports); *see also* Ronald J. Bacigal, *Implied Hearsay: Defusing the Battle Line between Pragmatism and Theory,* 11 S. Ill. U. L.J. 1127, 1141–43 (noting that the Supreme Court declined to adopt an implied hearsay analysis in *Church* ).

---

with a handgun, that the same evening the defendant arranged an exchange of a gun for drugs, and *that [the officer's] gun was retrieved from the persons who purportedly exchanged drugs for the gun, are circumstances* which prove that the handgun... was taken by the defendant from [the officer].
*Id.* (emphasis added).

The neighbor who purportedly gave cocaine to the defendant for a gun did not testify. Instead, the Commonwealth linked the gun to the defendant by using the testimony of the witness concerning the circumstances of the gun's retrieval. The issue to be established by the witness' testimony was that the gun the neighbor gave to the witness was the same gun that the neighbor received from the defendant. Obviously, under the majority's implied hearsay analysis, the witness' testimony that she received "a 9mm handgun" from the neighbor contains the implied assertion by the neighbor that it was the same handgun that the defendant earlier gave to the neighbor. No evidence proved that the witness saw the handgun in the defendant's possession or could testify from her own knowledge that it was the handgun the defendant possessed.

Although the *White* decision did not cite *Church,* clearly its discussion of "[c]ircumstantial evidence" and "circumstances which prove that the handgun admitted in evidence was taken by the defendant from [the officer]" tacitly applied the *Church* analysis. *See White,* 21 Va.App. at 719, 467 S.E.2d at 302. That *Church*-type analysis relied on "[p]roof that ... [the officer's] gun was retrieved from the persons who purportedly exchanged drugs for the gun" as a chain in the circumstantial evidence tending to "prove that the handgun admitted in evidence was taken by the defendant from [the officer]." *White,* 21 Va.App. at 719, 467 S.E.2d at 302; *cf. Church,* 230 Va. at 212, 335 S.E.2d at 825–26. Although the "proof that ... [the officer's] gun was retrieved from the persons who purportedly exchanged drugs for the gun" necessarily contains the neighbor's assertion, this Court relied on that proof as admissible circumstantial evidence linking the gun to the defendant. *See White,* 21 Va.App. at 719, 467 S.E.2d at 302. Thus, *White* implicitly rejected the majority's implied hearsay analysis.

Even under the majority's expanded definition of hearsay, I would hold that the officer's testimony did not constitute hearsay. According to the majority, a question may be hearsay if it contains an implied assertion of fact and is offered to prove that fact. In applying the new rule to this case, the majority states that "when [Brown] asked 'Does [the complainant] know I am here?', he was necessarily implying or asserting, 'I know [the complainant] personally.'" Even if I were to assume that the question contains an implied assertion of a fact, I disagree that it is the assertion the majority posits. If the question contains an implied assertion, it can be no more than an assertion that Brown was at the police station or that the complainant knew he was there. Simply put, I cannot agree that the question impliedly asserts that Brown knew the complainant.

Although the trial judge ruled that the police officer could not testify that Brown asked the question, the judge later acknowledged that "the purpose of the question is not, Does she really know I'm here?, but it's offered for the jury to establish some knowledge of a person that [Brown] would think to ask that as a question." I agree with the trial judge's observation that if any implied assertion is contained in the question, the assertion is either that the complainant knew Brown was at the police station or that Brown was at the police station.

The trial judge's comment precisely states the non-hearsay purpose recognized in *Church*—*circumstantial evidence* of a fact not asserted in the statement. Here, the trial judge correctly acknowledged that the question was not offered to prove either that Brown was at the police station or that the complainant knew he was at the police station. Rather, it was offered for the non-hearsay purpose of showing Brown's state of mind toward the complainant that would cause him to ask that question. The fact that the question was asked also tended to prove by circumstantial evidence Brown's incredulity at being arrested—a state of mind likely to have arisen from his belief that his contact with the complainant was consensual. The trial judge's comment properly addresses

the purpose of offering in evidence the question. Brown's state of mind, that he was familiar with the complainant and believed the encounter was consensual, was proved by the fact that he asked the question and was central to his defense.[4]

The evidence that was offered by Brown in this case fits squarely within the principle of *Church.* Because the police officer's testimony relating Brown's question was not hearsay under Virginia decisional law, I would reverse the trial judge's refusal to admit the testimony.

## II.

### GENTRY'S TESTIMONY

At trial, defense counsel sought to introduce testimony that Charles Gentry "ha[d] seen [Brown] and [the complainant] together on more than one occasion ... [and that] on one occasion, he overheard a conversation between [Brown] and [the complainant] involving trading sex and cocaine." In offering the evidence, Brown's counsel stated that the purpose of Gentry's testimony was to prove that Brown was well acquainted with the complainant. Brown's defense rested upon proving that he and the complainant knew each other and had consensual sexual intercourse. While I agree with the majority that the trial judge erred in excluding Gentry's testimony, I disagree with the conclusion that the error was harmless.

" '[A] fair trial on the merits and substantial justice' are not achieved if an error at trial has affected the verdict." *Lavinder v. Commonwealth,* 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (*en banc*) (quoting Code § 8.01–678). Gentry's testimony, if believed by the jury, would have tended

---

4. Because the principle is well established that the jury is the sole judge of the weight of the evidence and the credibility of the witnesses, *see Mitchell v. Commonwealth,* 141 Va. 541, 558, 127 S.E. 368, 374 (1925); *Brooks v. Commonwealth,* 15 Va.App. 407, 414, 424 S.E.2d 566, 571 (1992), Brown was prejudicially disadvantaged when the jury was not allowed to hear the police officer testify that Brown had, indeed, asked the question.

to prove an element of Brown's consent defense. Although the Commonwealth introduced physical evidence of disarray in the apartment and the complainant's injuries as proof of the sexual offenses, the question of rape or consensual sex ultimately rested upon the jury's determination of the credibility of the witnesses. It is well settled that the credibility of witnesses, the weight accorded witnesses' testimony, and the inferences to be drawn from proven facts are matters that are within the province of the fact finder. *See Barrett v. Commonwealth,* 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986).

If the trial judge had not barred the evidence and the jury found Gentry to be a credible witness, the jury would have had a basis upon which it could have found that the complainant lied concerning her relationship with Brown. Because the complainant and Brown agreed that sexual relations occurred but differed on whether the acts were consensual, the credibility of each "was paramount in determining the ultimate issue of guilt or innocence." *Evans–Smith v. Commonwealth,* 5 Va.App. 188, 210, 361 S.E.2d 436, 448 (1987). Thus, we cannot "conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." *Barrett,* 231 Va. at 107, 341 S.E.2d at 193.

Furthermore, a harmless error analysis is not merely a sufficiency of the evidence analysis. *See Hooker v. Commonwealth,* 14 Va.App. 454, 458, 418 S.E.2d 343, 345 (1992). The evidence in this case was disputed. Even if "the other evidence amply supports the jury's verdicts, [error is not harmless when] the disputed testimony may well have affected the jury's decision." *Cartera v. Commonwealth,* 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978). Where, as here, the trial judge excludes evidence that tends to support the defendant's theory of the case, the harmful effect of that error cannot be determined merely by weighing the merits of the Commonwealth's evidence. The harmful error lies in improperly denying the defendant an opportunity to put before the jury evidence to rebut the Commonwealth's evidence.

I would reverse the convictions and remand the case to the circuit court. Accordingly, I dissent.